# EXHIBIT A



Office of
# TOM ORLANDO
**Lorain County Clerk of Court of Common Pleas**
Lorain County Justice Center, 225 Court St., 1st Floor, Elyria, OH 44035

## Public Docket Information

### *TIMOTHY ROSE V/S THE SAFARILAND GROUP LLC*    Case Number: **25CV216849**

### Case Details

| | |
|---|---|
| Type Of Action: | Other Civil-CV |
| Judge: | Bremke, Judge Giovanna |
| Filed On: | 6/13/2025 |

### Parties

| Name | Birth Date | Party | Address | Attorney(s) |
|---|---|---|---|---|
| ROSE, TIMOTHY | N/A | P | 456 16TH ST CONNEAUT, OHIO 44030 | DEBEVEC, RHONDA B THE DEBEVEC LAW FIRM 700 WEST SAINT CLAIR AVENUE, SUITE 214 CLEVELAND, OHIO 44113 |
| ROSE, STACY | N/A | P | 456 16TH ST CONNEAUT, OHIO 44030 | DEBEVEC, RHONDA B THE DEBEVEC LAW FIRM 700 WEST SAINT CLAIR AVENUE, SUITE 214 CLEVELAND, OHIO 44113 |
| THE SAFARILAND GROUP LLC | N/A | D | C/O CT CORPORATION SYSTEM 1200 SOUTH PINE ISLAND RD PLANTATION, FLORIDA 33324 | |
| DEFENSE TECHNOLOGY LLC | N/A | D | C/O CT CORPORATION SYSTEM 4400 EASTON COMMONS WAY, STE 125 COLUMBUS, OHIO 43219 | |
| FORSYTHE, KEITH | N/A | D | C/O DEFENSE TECHNOLOGY LLC 1855 SOUTH LOOP CASPER, WYOMING 82601 | |

### Filter Docket

☑ Show All      ☐ FILING

[ Filter ]

| Date | Type | Description |
|---|---|---|
| 06/13/2025 | N/A | Filing fee of $350.00, paid by: DEBEVEC LAW FIRM |
| 06/13/2025 | N/A | Receipt #: 25-0018041 Processed. |

| 06/13/2025 | FILING COMPLAINT FILED. (TRIAL BY JURY IS HEREBY REQUESTED) |
| 06/16/2025 N/A | SUMMONS W/COPY OF COMPLAINT SENT CERTIFIED MAIL TO: THE SAFARILAND GROUP LLC ARTICLE #9414726699042243517401 |
| 06/16/2025 N/A | SUMMONS W/COPY OF COMPLAINT SENT CERTIFIED MAIL TO: DEFENSE TECHNOLOGY LLC ARTICLE #9414726699042243517395 |
| 06/16/2025 N/A | SUMMONS W/COPY OF COMPLAINT SENT CERTIFIED MAIL TO: KEITH FORSYTHE ARTICLE #9414726699042243517388 |
| 07/03/2025 N/A | Certified Mail Return : Article # : 9414726699042243517395, Delivered Date : , Reason : Signed Receipt for Certified Mail Returned and Filed., Party : DEFENSE TECHNOLOGY LLC, Note : NO DATE |
| 07/18/2025 N/A | Certified Mail Return : Article # : 9414726699042243517401, Delivered Date : 06/30/2025, Reason : Signed Receipt for Certified Mail Returned and Filed., Party : THE SAFARILAND GROUP LLC, Note : NO SIGNATURE |
| 07/18/2025 N/A | Certified Mail Return : Article # : 9414726699042243517388, Delivered Date : , Reason : Signed Receipt for Certified Mail Returned and Filed., Party : KEITH FORSYTHE, Note : NO DATE |

**Print Docket**     **Close**

# LORAIN COUNTY COURT OF COMMON PLEAS
## LORAIN COUNTY JUSTICE CENTER
### 225 COURT STREET
### ELYRIA, OHIO 44035

TIMOTHY ROSE                                                    CASE NO. 25CV216849
456 16TH ST
CONNEAUT, OH 44030

      VS.

TO:   KEITH FORSYTHE
      C/O DEFENSE TECHNOLOGY LLC
      1855 SOUTH LOOP
      CASPER, WY 82601

# SUMMONS ON COMPLAINT

You have been named defendant in a complaint filed in Lorain County Court of Common Pleas by plaintiff(s):

TIMOTHY ROSE
456 16TH ST
CONNEAUT, OH 44030

A copy of the complaint is attached hereto. The name and address of the plaintiff's attorney is:

RHONDA B DEBEVEC
THE DEBEVEC LAW FIRM
700 WEST SAINT CLAIR AVENUE, SUITE 214
CLEVELAND, OH 44113

You are hereby summoned and required to serve a copy of your answer to the complaint upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, within **TWENTY-EIGHT (28) DAYS** after service of this summons on you, exclusive of the day you receive it. Your answer must **ALSO** be filed with this Court within three (3) days after you serve, (delivered or by mail), a copy of your answer on the plaintiff's attorney.

If you fail to appear and defend, judgment by default will be rendered against you for the relief demanded in the complaint.

**TOM ORLANDO**
**CLERK OF COURTS OF COMMON PLEAS**
**LORAIN COUNTY, OHIO**

6/16/2025

BY: _____
       Deputy Clerk

# *25CV216849*

**2 5 C V 2 1 6 8 4 9**

FILED
LORAIN COUNTY

2025 JUN 13 P 2: 21

COURT OF COMMON PLEAS
TOM ORLANDO

IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

TIMOTHY ROSE                               )   CASE NO.
456 16th Street                            )
Conneaut, Ohio 44030-1651                  )   JUDGE
                                           )
                                           )
    and,                                   )
                                           )   JUDGE GIOVANNA V. BREMKE
STACY ROSE                                 )
456 16th Street                            )
Conneaut, Ohio 44030-1651                  )
                                           )   **COMPLAINT**
         Plaintiffs,                       )
                                           )
    vs.                                    )   [Trial By Jury Is Hereby Requested]
                                           )
THE SAFARILAND GROUP, L.L.C.               )
c/o CT Corporation System                  )
1200 South Pine Island Road                )
Plantation, Florida 33324                  )
                                           )
    and,                                   )
                                           )
DEFENSE TECHNOLOGY, L.L.C.                 )
c/o CT Corporation System                  )
4400 Easton Commons Way, Suite 125         )
Columbus, Ohio 43219                       )
                                           )
and,                                       )
                                           )
KEITH FORSYTHE                             )
c/o Defense Technology, L.L.C.             )
1855 South Loop                            )
Casper, Wyoming 82601                      )
                                           )
         Defendants.                       )

1

## PARTIES

1.     At all times relevant, Plaintiffs Timothy Rose (hereinafter "Mr. Rose") and Stacy Rose (hereinafter "Mrs. Rose") were residents of the state of Ohio and lawfully married.

2.     At all times relevant, Defendant Safariland Group, L.L.C. (hereinafter "Safariland") was a limited liability company formed under Florida law with its principal place of business at 13386 International Parkway, Jacksonville, Florida.

3.     At all times relevant, Defendant Defense Technology, L.L.C. (hereinafter "Def-Tech") was a limited liability company formed under Delaware law with its principal place of business at 1855 South Loop, Casper, Wyoming 82601.

4.     At all times relevant, Defendant Keith Forsythe (hereinafter "Forsythe") was a resident of Louisiana and employed by Co-Defendant Def-Tech as a part-time Training Instructor.

5.     At all times relevant, Defendant Forsythe acted within the course and scope of his employment and/or agency with Co-Defendant Def-Tech.

6.     Defendant Forsythe's business card had Co-Defendant Def-Tech's trademarked logo and represented he was a "Technical Sales Specialist" for "Defense Technology" as depicted below:

2



7.     As a matter of law, Defendant Def-Tech is liable for Co-Defendant Forsythe's actions, omissions and/or wrongful misconduct committed within the course and scope of his employment and/or agency with them.

8.     Upon information and belief, at all times relevant, Defendant Safariland wholly owned Co-Defendant Def-Tech.

9.     Defendant Def-Tech's website markets its munition products and includes an "Express Limited Warranty of Munitions Products" ("Express Warranty").

10.    Under the Express Warranty's terms, Defendant Safariland refers to itself as "the Company" and "warrants the Defense Technology brand of munitions products to be free from defects in materials and workmanship under normal use and service for a period of five (5) years from the date of manufacture" as depicted below:

3



# DEFENSE
## TECHNOLOGY™

### EXPRESS LIMITED WARRANTY
### FOR MUNITIONS PRODUCTS

Safariland (the "Company") warrants the Defense Technology brand of munitions products to be free from defects in materials and workmanship under normal use and service for a period of five (5) years from date of manufacture. If you believe the product has any defects in materials or workmanship, cease use immediately and contact Customer Service. If Safariland determines that the product proves to be defective in materials or workmanship during the applicable warranty period, then Safariland will (at its election) repair, replace or issue a pro- rated purchase price credit for such product.

11.     Although Defendant Safariland attempts to limit its liability within the

Express Warranty, customers are instructed to contact "Safariland LLC, 1855 S. Loop,

Casper, WY 82601" for "any warranty claims" as depicted below.

For any warranty claim, please contact Customer Service for a prompt resolution to your concern at one of the numbers provided below.

Safariland, LLC
1855 S. Loop
Casper, WY 82601

Customer Service:
307.235.2136

www.defense-technology.com

REV 6.20

12.     Upon information and belief, at all times relevant, Defendants Safariland

and Def-Tech operate out of the same location, 1855 South Loop, Casper, Wyoming

82601.

13.     Upon information and belief, at all times relevant, Defendant Safariland actively participated in the day-to-day operations of Co-Defendant Def-Tech including, but not limited to, the development, design (including any warnings) and manufacture of Co-Defendant Def-Tech's munitions and launchers, including the products involved in Mr. Rose's injury.  (When Defendants Safariland and Def-Tech are referred to in their manufacturer capacity, they will be referred to as "Defendant Manufacturers".)

14.     Upon information and belief, Defendant Safariland actively participated in the day-to-day operations of Co-Defendant Def-Tech including, but not limited to, the development of lesson plans and training of Co-Defendant Def-Tech's instructors.

15.     As a matter of law, Defendants Safariland and Def-Tech are liable for any negligence or misconduct committed by Co-Defendant Forsythe within the course and scope of his employment and/or agency with them.

## JURISDICTION AND VENUE

16.     Plaintiffs incorporate by reference each preceding allegation as if fully rewritten herein.

17.     At all times relevant herein, Defendants Safariland and Def-Tech conducted regular and sustained business in Ohio by: (a) introducing their products into the stream of Ohio's commerce; (b) providing training and instruction on its products within the State; and, (c) otherwise engaging in substantial commerce and business activity in Ohio.

18.     In June 2024, Defendant Forsythe travelled to Ohio and stayed for a number of days to provide training to law enforcement officers and others on the

Defendant Manufacturers' products and otherwise engaged in substantial commerce and business activity in Ohio.

19.    Pursuant to Ohio Revised Code § 2307.382, by virtue of the Defendants' conduct described above, this Court has personal jurisdiction over each one of the Defendants.

20.    Venue is appropriate because the events giving rise to this claim occurred within Lorain County.  Specifically, Mr. Rose's left arm was injured on June 14, 2024 when Defendant Forsythe instructed a student to launch one of the Defendant Manufacturers' 40MM signaling projectiles toward Mr. Rose at close range in Lorain County, Ohio.

## DESCRIPTION OF PRODUCTS

21.    Plaintiffs incorporate by reference each preceding allegation as if fully rewritten herein.

22.    The Defendant Manufacturers manufacture various types of munitions including "Noise Flash Distraction Devices" (hereinafter "NFDD") under the brand name Defense Technology.

23.    NFDDs produce a momentary burst of intense light and loud bang to cause distraction and confusion and are referred to as a "flash-bang."

24.    NFDDs come in different calibers and configurations.  Larger calibers, such as 40MM, carry a "larger payload" and/or create a greater impact.

6

25.    Although NFDDs are typically deployed by hand, some NFDDs are designed to be launched by a rifle-like device such as the Defendant Manufacturers' 40MM Tactical Single Launcher (40LMTS) which is depicted below:



26.    The Defendant Manufacturers manufacture "signaling" NFDDs that are deployed by a launcher including the 40MM Warning/Signaling Munition, Short Range, Inert Marking, 75 Meters, Model 6028IM-SR and other variations of Model 6028.

27.    According to the Defendant Manufacturers' express representations on its website, 40MM Signaling Munitions are:

a) "manufactured to deflagrate at a set distance and altitude and has the option of marking or irritant payloads.  These distances are 75 and 150 meters from the point of origin;" and,

b) "designed to travel their respective distances and deflagrate 20-30 feet above the target when the launcher is held at a15 degree elevation angle."

28.    When a Signaling Munition deflagrates 20 to 30 feet above a crowd, it, and any debris, will fall to the ground without harming individuals below.

29.    Although NFDDs are considered a "less lethal" munition, the Defendants know they can cause, and have caused, serious and even fatal injuries.

30.    Because of this risk for serious injury, Defendant Manufacturers' 40MM Signaling NFDD is intended to deflagrate 20 to 30 feet above the target so that direct impact is avoided and any potential debris falls to the ground harmlessly.

7

## STATEMENT OF FACTS

31.    Plaintiffs incorporate by reference each preceding allegation as if fully rewritten herein.

32.    From Monday, June 10, 2024 through Friday, June 14, 2024, Mr. Rose attended training at an Ohio Tactical Training Center located in Amherst, Ohio.

33.    On the first day, June 10, 2024, Mr. Rose was provided a form by Defendant Forsythe titled: "Training Registration, Safety Rules and Waiver Form" ("Waiver Form") which Mr. Rose completed and signed.

34.    As a matter of law, a waiver of future liability, like the Waiver Form, is to be strictly construed against the party seeking the waiver.

35.    Under Course(s), Mr. Rose wrote "OC Aerosol Instructor" (or Pepper Spray).  Mr. Rose did not sign any other Waiver Forms for the rest of the week and never signed a Waiver Form for the Noise Flash Diversionary Device Course given on Friday, June 14, 2024.

36.    The Waiver Form stated, in pertinent part, at Paragraph 2, that "I fully understand that with any type of physical training the possibility always exists that an injury may and I voluntarily and freely accept such risk that may occur to me or others participating in **this course**."

37.    The Waiver Form also stated, in pertinent part, at Paragraph 5, "I agree that I am voluntarily attending this course and/or at the request of my department and in no way will I hold any student and/or participant, Safariland Training Staff, or any agencies affiliated with this program responsible for injuries I may sustain **during this course**.  I have honestly and without malicious intent reported any present, past, or

8

current personal injury that I may have sustained which may prohibit me in participating or attending this course to the primary instructor."

38.     By its express terms, the Waiver Form has no potential application to the shooting incident injuring Mr. Rose for all of the following reasons:

a)     The NFDD Course given on Friday, June 14, 2024 was not listed on the Form and, thus, not within the scope of "this Course;"

b)     The Shooting did not occur "during this course," since the formal training had concluded and/or there was no training component to the Shooting Demonstration;

c)     Defendant Forsythe, as a Defense Technology Technical Sales Specialist, is not within the scope of either "Safariland's Training Staff or any agencies affiliated within this program"; and,

d)     Defendants Safariland and Def-Tech are not within the scope of either "Safariland's Training Staff or any agencies affiliated within this program."

39.     As a matter of law, the Waiver Form is not applicable to Plaintiffs' claims premised upon product liability and/or wrongful misconduct.

40.     The Waiver Form's terms are ambiguous in all of the following respects:

a)     The term "Safariland Training Staff" does not clearly include the actions of Defendant Forsythe who represented himself as Co-Defendant Def-Tech's Technical Sales Specialist – not Safariland;

b)     The term "agencies" do not reasonably include private companies such as Defendants Safariland and Def-Tech within its scope; and,

c)     The term "during this course" does not clearly include demonstrations that occur after formal training to promote munition products for which no formal training is being provided.

41.     For all of the reasons described above, the Waiver Form signed by Mr. Rose on June 10, 2024, for the Aerosol Instructor Course, does not bar Plaintiffs' claims

premised on a Shooting Demonstration that occurred on Friday, June 14, 2024 after the NFDD Course.

42.    On Friday, June14, 2024, Mr. Rose attended Noise Flash Diversionary Devices Instructor Course conducted by Defendant Forsythe.

43.    Throughout training that day, Defendant Forsythe instructed the students on the use of hand-deployed "flash bang" munitions.  After receiving instruction and taking a Diversionary Device exam, the students were given two hours to practice hand-deployment of NFDDs.

44.    At approximately 5:30 p.m. **after** formal instruction was scheduled to have already ended, Defendant Forsythe announced to the students he would demonstrate his "favorite" munitions and instructed the students, including Mr. Rose, to walk down range 75 yards (or approximately 68.5 meters).

45.    Defendant Forsythe told the students he was going to launch a 40MM signaling NFDD **ten feet** above their heads so they could experience the effects of the round.  Defendant Forsythe represented to the students that the demonstration was standard operating procedure and presented no risk of injury.

46.    Defendant Forsythe asked for a volunteer to shoot the launcher but did not provide any formal instruction on how to safely launch a signaling NFDD toward a crowd.

47.    Because the class had ended, or was scheduled to end, the demonstration of a launched signaling NFDD served no "training" purpose and was instead a promotion of the Defendant Manufacturers' product line.

48.    Prior to Defendant Forsythe's announcement, Mr. Rose's familiarity with NFDDs was limited to hand deployment.  Mr. Rose had no prior experience or familiarity with NFDDs being launched for crowd control purposes.

49.    Mr. Rose relied upon Defendant Forsythe's representations and expertise, as the Defendant Manufacturers' Technical Sales Specialist, that the Shooting Demonstration, as planned and executed under Defendant Forsythe's instruction, would be safe and not present a risk of serious injury.

50.    Immediately before shooting toward the group of students, Defendant Forsythe advised the student-volunteer to lower the barrel's launcher to decrease the deployment angle.

51.    Upon information and belief, the products Defendant Forsythe used during the Shooting Demonstration were Defendant Def-Tech's 40MM LMT Tactical Single Launcher, Expandable Stock, Model 1425 (hereinafter "Launcher") and 40MM Warning/Signaling Munition, Short Range, Inert 75 meters, Model 6028 IM-SR (or another Model 6028) (hereinafter "Munition".)

52.    Under Defendant Forsythe's instruction, the volunteer-student shot the Munition toward the students, including Mr. Rose, at close range.

53.    If the Munition had been launched at a fifteen-degree elevation, per the Defendant Manufacturers' instructions, the Munition would have reached the student group 75 yards away at a height of roughly 40 feet above the ground.

54.    Instead, the Munition traveled at a trajectory between ten to fifteen feet **above the ground** at a rate of approximately 200 feet per second.   After the flash, a

11

black projectile broke away from the Munition and traveled straight toward Mr. Rose at an estimated 200 feet per second with no opportunity to avoid direct impact.

55.    Mr. Rose's left arm was directly impacted by the projectile, cutting through his shirt and skin, causing extreme pain and significant bleeding.

56.    While Mr. Rose waited for the ambulance to arrive, medics used a combat compression on Mr. Rose's left arm to stop the bleeding.

57.    Mr. Rose was taken by ambulance to the hospital where his wound was cleaned but could not be sewn.

58.    Mr. Rose's arm continued to bleed moderately over a number of days and then intermittently over a few weeks.

59.    For months after the shooting, Mr. Rose's activities were curtailed by his injury due to pain, skin sensitivity, concerns about infection, and inability to strain the muscle.  Mr. Rose is left with permanent scarring.

### Ohio Tactical Officers Association Investigation

60.    Plaintiffs incorporate by reference each and every allegation as if fully rewritten herein.

61.    After the shooting, the Ohio Tactical Officers Association, Executive Director, Pat Fiorilli, was notified and immediately came to the Center to investigate. While en route, he instructed Defendant Forsythe to remain at the Facility until he arrived.

62.    Mr. Fiorilli photographed pieces of the projectile that Defendant Forsythe had already stowed in his luggage.

63.    The shell's casing stated: "To be used by trained law enforcement, correctional or military personnel.  Defense Technology, LLC, Casper WY, 82601" as depicted below:



64.    When Mr. Fiorilli asked Defendant Forsythe why he had fired a projectile at a group of students, Defendant Forsythe advised Defendant Forsythe that this demonstration was a "common practice for Defense Technology" but admitted that allowing a student to fire the round from the Launcher was not.

65.    Defendant Forsythe advised Mr. Fiorelli that no one previously had been injured in this type of demonstration and that the round had "deflagrated" causing a piece to strike the student.

66.    During Defendant Forsythe's conversation with Mr. Fiorelli and the Facility owner, Defendant Forsythe repeatedly referenced the Waiver Forms signed by the students.

67. During their conversation, the Facility Owner became angry with Defendant Forsythe for shooting a projectile at the group and his indifference because the students had signed a waiver.

68. Based on Mr. Rose's wound, Mr. Fiorelli concluded that Mr. Rose's arm had sustained a direct impact and was not struck by a falling piece of projectile.

69. As part of Ohio Tactical Officers Association's investigation, Mr. Fiorilli requested Defendant Def-Tech to provide him with copies of its lesson plans, course outlines and curriculum.

70. Defendant Def-Tech never produced the lesson plans to the Ohio Tactical Officer Association.

**FIRST CAUSE OF ACTION**
**Products Liability Act – Defective Due to Inadequate Warning or Instruction;**
**Failure To Conform To Representation And Design**

71. Plaintiffs incorporate by reference each and every allegation as if fully rewritten herein.

72. Given the Defendants' knowledge of the risk, the reasonably prudent manufacturer would have warned students about the danger posed by Defendant Forsythe's Shooting Demonstration.

73. The Munition and/or Launcher were defective due to inadequate warnings or instructions given by Co-Defendant Forsythe's failure to warn and/or instruct the students, including Mr. Rose, of the following:

a) The "signaling" Munition posed a risk of serious injury when it was fired at the angle and distance;

b) The Munition traveled at extremely high rate of speed and would pose a risk of serious harm if not deployed well above the target's heads;

14

c)  Defendant Forsythe's intention to shoot the Munition only ten feet above the students' heads was **only one-third to half** the required distance;

d)  Defendant Forsythe's decision to have an untrained student-volunteer launch the Munition at a group without any formal training was reckless and substantially increased the risk of serious injury; and,

e)  Defendant Forsythe's other deviations from the Lesson Plan when "demonstrating" the Munition, otherwise, made the Munition more dangerous than the Students, including Mr. Rose, reasonably expected.

74.  The Munition was also defective in failing to conform to representations its agent, Co-Defendant Forsythe, made to Mr. Rose and the other students that the Munition was safe to launch in their direction.

75.  Upon information and belief, the Munition was also defective in design since; (a) it was more dangerous than the reasonably prudent student, like Mr. Rose, would expect, and, (b) the foreseeable risks of its design, which included a known risk of breaking apart, exceeded the benefits of that design.

76.  Upon information and belief, a technically and economically alternative design was available that would eliminate, or greatly reduce, the risk of a direct impact from the projectile.

77.  As a direct and proximate result of the Defendants' defective products as described above, Mr. Rose sustained permanent injury and loss including, but not limited to, scarring, severe pain and suffering, incurred medical expense and lost wages and was otherwise damaged.

**WHEREFORE,** Plaintiffs pray for judgment against  the Defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) to fully and adequately compensate Plaintiff Tim Rose for his injuries and damages incurred, including but not

limited to, conscious pain and suffering, permanent scarring, past and future medical expenses, lost wages, future risk of complications, loss of enjoyment, costs of suit, interest, and any other relief to which Plaintiffs may be entitled to and/or that the Court finds is appropriate and or equitable.

## SECOND CAUSE OF ACTION
### Negligence And Wrongful Misconduct

78.    Plaintiffs incorporate by reference each and every previous allegation as if fully rewritten herein.

79.    At all times relevant herein, the Defendants had the obligation to conduct themselves in a reasonably careful manner under the circumstances including, but were not limited to, exercise reasonable care in ensuring that Defendant Forsythe received appropriate training and provided appropriate instruction to Defendant Def-Tech's students.

80.    At all times relevant herein, the Defendants had the obligation to conduct themselves in a reasonably careful manner under the circumstances including, but were not limited to, exercise reasonable care in supervising Defendant Forsythe to ensure he did not engage in reckless practices that posed risk of substantial harm to students.

81.    At all times relevant herein, the Defendants had an obligation to conduct himself in a reasonably careful manner under the circumstances and to refrain from reckless, wanton and willful misconduct in how training sessions were conducted.

82.    On June 14, 2024, the Defendants knew or, in the exercise of reasonable care, should have known that shooting the Munition at a group of students 75 yards

away posed an unacceptable risk of serious injury and was negligent, reckless, wanton, and willful misconduct.

83.    On June 14, 2024, the Defendants knew or, in the exercise of reasonable care, should have known that shooting the Munition **ten feet above the students' heads**, instead of the 20 to 30 feet above the target as required, posed an unacceptable risk of serious injury and was negligent, reckless, wanton, and willful misconduct.

84.    On June 14, 2024, the Defendants knew or, in the exercise of reasonable care, should have known that instructing an untrained student to shoot the Munition at a group of students 75 yards away created an imminent risk of harm and was negligent, reckless, wanton, and willful misconduct.

85.    On June 14, 2024, the Defendants knew or, in the exercise of reasonable care, should have known that shooting the Munition from the Launcher toward the students **only ten to fifteen above the ground, instead of the 20 to 30 feet above the target as required**, created an imminent risk of harm and was negligent, reckless, wanton, and willful misconduct.

86.    The Defendants were negligent and otherwise acted unreasonably by falsely representing to the students that Defendant Forsythe's demonstration of launching the Munition toward the students at a short distance and low trajectory was safe.

87.    The Defendants' conduct on June 14, 2024 under all of the circumstances, described above, was malicious, reckless, wanton and willful disregard for the students' safety.

88.    The Defendants' alleged "custom" of launching signaling munitions at student groups from short distances creates an undue risk of serious harm and is reckless, wanton and willful disregard for the students' safety.

89.    As a direct and proximate result of Defendants' negligence described above, Mr. Rose sustained permanent injury and loss including, but not limited to, scarring, severe pain and suffering, incurred medical expense and lost wages and was otherwise damaged.

90.    As a direct and proximate result of the Munition and Launcher not conforming to the representations made by Defendant Forsythe and the other defects, Mr. Rose sustained permanent injury and loss including, but not limited to, scarring, severe pain and suffering, incurred medical expense and lost wages and was otherwise damaged.

91.    As a direct and proximate result of the Defendants' reckless and willful misconduct, as described above, Mr. Rose sustained permanent injury and loss including, but not limited to, scarring, severe pain and suffering, incurred medical expense and lost wages and was otherwise damaged.

92.    **WHEREFORE,** Plaintiff Timothy Rose prays for judgment against the Defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) to fully and adequately compensate Plaintiff for his injuries and damages incurred, including but not limited to, permanent scarring, severe pain and suffering, incurred medical expense and lost wages, and any other relief to which the Plaintiff Timothy Rose may be entitled to and/or that the Court finds is appropriate and or equitable.

## THIRD CAUSE OF ACTION

18

## Punitive Damages

93.     Plaintiffs incorporate by reference each and every previous allegation as if fully rewritten herein.

94.     The Defendants' decision to allow a student-volunteer to shoot a Munition at a group of people from a Launcher at one-third to one-half of the height required at a distance shorter than recommended was willful, wanton, reckless and demonstrated actual malice with conscious disregard for the public's safety and, specifically, Mr. Rose's safety.

95.     As a direct and proximate result of Defendants' wanton misconduct described above, Mr. Rose sustained permanent injury and loss including, but not limited to, scarring, severe pain and suffering, incurred medical expense and lost wages and was otherwise damaged.

**WHEREFORE**, Plaintiff Timothy Rose demands a punitive damage award in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) sufficient to punish the Defendants for their wanton misconduct and to deter similar misconduct in the future and demands any other relief to which Plaintiff Timothy Rose may be entitled to and/or that the Court finds appropriate and/or equitable.

## FOURTH CAUSE OF ACTION
### Assault and Battery

96.     Plaintiffs incorporate the facts and allegations stated above as if fully rewritten herein.

97.     To the extent Defendant Forsythe was not following Defendant Def-Tech's Lesson Plan and opted to conduct the Shooting Demonstration outside the scope of his

employment and agency, Defendant Forsythe intentionally instructed a student-volunteer to shoot at Mr. Rose.

98.    Given Defendant Forsythe's announcement that the Munition would be fired above the students' heads, Mr. Rose did not agree or assume the risk of being directly impacted by the Munition.

99.    As a direct and proximate result of Defendant Forsythe's battery, as described above, Mr. Rose sustained permanent injury and loss including, but not limited to, scarring, severe pain and suffering, incurred medical expense and lost wages and was otherwise damaged.

**WHEREFORE**, Plaintiff Timothy Rose demands a compensatory award and punitive damage award in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) sufficient to punish Defendant Forsythe for his wanton misconduct and to deter similar misconduct in the future and demands any other relief to which Plaintiff Timothy Rose may be entitled to and/or that the Court finds appropriate and/or equitable.

## FOURTH CAUSE OF ACTION
### Loss of Consortium

100.    Plaintiffs incorporate the facts and allegations stated above as if fully rewritten herein.

101.    As a direct and proximate result of the Defendants' defective products, as described above, Co-Plaintiff Stacy Rose temporarily suffered the loss of her husband's services, including, but not limited to, society, services, companionship, comfort, love and solace and was otherwise damaged.

102.  As a direct and proximate result of the Defendants' negligence and willful misconduct, as described above, Plaintiff Stacy Rose temporarily suffered the loss of her husband's services, including, but not limited to, society, services, companionship, comfort, love and solace and was otherwise damaged.

**WHEREFORE**, Plaintiff Stacy Rose demands judgement against Defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) for compensatory damage award and a punitive damage award in an amount in excess of ($25,000.00) sufficient to punish the Defendants for their wanton misconduct and to deter similar misconduct in the future and demands any other relief to which Plaintiff Stacy Rose may be entitled to and/or that the Court finds appropriate and/or equitable.

**WHEREFORE**, Plaintiffs demand a punitive damage award in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) sufficient to punish the Defendants for their wanton misconduct and to deter similar misconduct in the future and demand judgement against Defendants in an amount in excess of $25,000.00 for compensatory damages together with interest, costs, attorney fees, and any other relief this Court deems appropriate.

**A TRIAL BY JURY IS HEREBY REQUESTED.**

Respectfully submitted,

RHONDA BAKER DEBEVEC (0068260)
**The Debevec Law Firm**
700 W. Saint Clair Ave., Suite 214
Cleveland, Ohio 44113
rdebevec@debeveclaw.com
(216) 331-0953 (Phone): (216) 331-0954 (Fax)

*Counsel for Plaintiffs*

21